IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL M. MELE | : | CIVIL ACTION |
|    *d/b/a Stanton Sales* | : | |
| | : | |
| v. | : | No. 09-174 |
| | : | |
| TSE SYSTEMS, GMBH, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                 **August 5, 2010**

Defendant TSE Systems, GmbH[1] (TSE, GmbH) asks this Court for summary judgment on Plaintiff Samuel Mele's remaining claims for intentional interference with contractual relations, arguing no facts exist which support Mele's claim TSE, GmbH interfered with Mele's business relationships. For the following reasons, this Court will grant TSE, GmbH's motion for summary judgment.

**FACTS**

Mele is an independent salesman and the sole proprietor of Stanton Sales, a business which contracts with manufacturers and distributors to sell medical and scientific supplies to research facilities. TSE, GmbH is a German company which develops and manufactures animal testing equipment. In 2004, TSE, GmbH decided to expand its business to the North American market. As part of this plan, TSE, GmbH incorporated TSE Systems, Inc., (TSE) a fully-owned subsidiary, to distribute TSE, GmbH's products in North America. Jens-Uwe Engler is one of TSE, GmbH's Chief Executive Officers and is the Chairman of TSE's Board of Directors.

---

[1] GmbH is an abbreviation for Gesellschaft mit beschrankter Haftung, which is the German equivalent of a limited liability company. *See A. Natterman & CIE GmbH v. Bayer Corp.*, 428 F. Supp. 2d 253, 259-60 (E.D. Pa. 2006).

1

On August 1, 2005, Mele, on behalf of Stanton Sales, signed a TSE Systems Inc. Manufacturers' Representative Agreement (the Agreement) which appointed Stanton Sales as a "non-exclusive sales commission representative for [TSE] Products in the Northeast and Southeast territory." Agreement, at 1. The initial term of the Agreement was from August 1, 2005, to March 31, 2006. The Agreement provided for 12-month contract extensions at the discretion of TSE.[2] TSE extended the Agreement twice. The Agreement stated TSE would give Mele 60 days notice, before the end of each fiscal year to inform him of its intent to either extend or terminate the Agreement. On January 28, 2008, TSE informed Mele his Agreement would not be renewed and would formally terminate on March 31, 2008.

Mele contends TSE, GmbH interfered with his contract with TSE, and further argues TSE Chairman Jens-Uwe Engler interfered with Mele's prospective contracts with his sales clients. In lieu of a list of prospective contracts which Mele believes Engler interfered with Mele provides an illustrative example of a sale he pursued at Harvard University. Mele states Engler interrupted his sales efforts at Harvard by calling and emailing the Harvard University representative directly, without including Mele in the communications. Mele states the Harvard representative agreed to purchase products from him, but changed his mind after Engler offered him a lower price on the same product. Mele asserts he was forced to offer the representative a lower price after Engler's contact and his commission was reduced.

Mele filed the instant lawsuit on January 13, 2009, bringing claims against TSE, GmbH for civil conspiracy, piercing the corporate veil, and intentional interference with business relations, and

---

[2] These optional 12-month extensions coincided with TSE's fiscal year, April 1,through March 31.

claims against TSE for breach of contract, intentional interference with business relations, fraud, civil conspiracy, piercing the corporate veil, and breach of the implied covenant of good faith and fair dealing. On May 12, 2009, this Court granted TSE's motion to dismiss Counts II, IV, VI, and VII of the complaint.[3] On May 14, 2009, the Court amended its May 12, 2004 Order to include dismissal of Count V of Mele's complaint, as this count was inadvertently omitted in the original order. The same day, TSE, GmbH filed a motion to dismiss. On June 15, 2009, this Court dismissed Counts VI and VII for civil conspiracy and piercing the corporate veil against TSE, GmbH.

Following disposition of these motions, Mele maintained claims against TSE for breach of contract and against TSE, GmbH for intentional interference with business relations. After the close of discovery, TSE and TSE, GmbH filed motions for summary judgment. This Court granted TSE's motion for summary judgment on May 27, 2010.

**DISCUSSION**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Doe v. County of Centre*, 242

---

[3] This Court held Mele could not maintain his claims for fraud, intentional interference with business relations, and civil conspiracy because his claims were based on a contractual duty between himself and TSE and were thus properly brought as contract, not tort, claims. Order of May 12, 2009, Doc. 13. The Court further held, because the Agreement at issue is governed by Michigan law, Mele's claim that TSE breached an implied covenant of good faith and fair dealing could not stand because Michigan does not recognize such a claim. Finally, this Court dismissed Mele's "piercing the corporate veil" claim, as this doctrine is a means of imposing liability, and not a cause of action in itself. *Id*.

F.3d 437, 446 (3d Cir. 2001). "Facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 120 S. Ct. 2658, 2677 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations and citation omitted).

Mele claims TSE's corporate parent, TSE, GmbH, intentionally interfered with his relationship with TSE and "engaged in conduct which was designed to lead to the termination of the Agreement." Compl. at ¶ 86.[4] TSE, GmbH argues this Court should grant summary judgment in

---

[4] Mele alleges "such behavior included, but is not limited to, the following:

> a. Failure to provide timely and complete responses to requests for information;
> b. Failure [to] provide appropriate customer support, training and post-installation follow-up;
> c. Implementation of a direct sales force consisting of [TSE] and/or [TSE, GmbH] employees to follow up on sales leads which should have been assigned to Plaintiff, thereby decreasing Plaintiff'[s] ability to meet its sales projections and creating an impression that Plaintiff was not an effective sales representative;
> d. Contacting potential customers identified, cultivated or developed by Plaintiff for the purpose of securing that business without any further

4

its favor because it did not interfere with Mele's business relations, and, even if it did, such interference was privileged.

TSE, GmbH first argues Mele has produced no evidence it "intentionally engaged in conduct which was designed to lead to the termination of the Agreement," as charged in Mele's complaint. Mele contends TSE, GmbH took the following steps to encourage TSE's termination of his Agreement: (1) instituting a policy to prevent Stanton Sales from receiving commissions on sales within the Territory unless it acted as the primary sales agent; (2) instituting a policy requiring Mele and Stanton Sales to complete commission verification forms before commissions were paid; and (3) involving itself in TSE's decision to terminate Mele's Agreement.

Mele's first two arguments fail because this Court has already concluded that, under the terms of the Agreement, TSE did not breach the Agreement by denying Mele commissions for all sales because Mele was a non-exclusive sales person entitled only to commission for those sales in which he acted as the primary or sole salesperson. *See Mele v. TSE, Systems, GmbH, et al.*, No. 09-174, 2010 U.S. Dist. LEXIS 52876 (E.D. Pa. May 27, 2010). This Court has also already addressed and disregarded Mele's claim TSE breached the Agreement by requiring him to verify his eligibility for commissions by submitting commission verification forms. *Id.*

The sole remaining question is whether TSE, GmbH interfered with Mele's relationship with TSE by involving itself in TSE's decision to terminate Mele's Agreement. It is undisputed that

---

      involvement by Plaintiff; and
      e. Insistence upon implementation of new forms and reporting systems as a precondition for sales leads and payment of commissions.

Compl. at ¶ 87.

Mele had a contractual relationship with TSE. Thus, this Court will analyze whether TSE, GmbH interfered with that relationship, and if so, whether such interference was privileged or justified.

To make out a claim for intentional interference with contractual or prospective contractual relations, a plaintiff must show: "(1) the existence of a contractual [or prospective contractual] relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with those contractual relations; (3) the absence of privilege or justification for the interference; and (4) actual damages resulting from the defendant's conduct." *Schulman v. J.P. Morgan Inv. Mgmt.*, 35 F.3d 799, 807 n.14 (3d Cir. 1994) (citing *Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 625 (Pa. Super. Ct. 1990). The Plaintiff must prove each element, including the absence of a privilege. *Bahleda v. Hankinson Corp.*, 323 A.2d 121, 122-23 (Pa. Super. Ct. 1974).[5]

In support of his argument TSE, GmbH engaged in actions which implicated TSE's decision to terminate Mele's Agreement, Mele first asserts that TSE, GmbH made decisions "pertaining to the hiring and firing of employees of TSE Inc.[,] including Stanton Sales." Pl.'s Opp. to TSE, GmbH's Mot. for Summ. J. at 41. Mele cites one exhibit, a chain of emails between TSE President Jim Marinik and Jens-Uwe Engler, in which the parties discuss hiring a replacement for a different TSE salesperson. *Id.* Ex. 18. Marinik and Engler discuss at length whether Marinik should seek out candidates and hold interviews himself, or whether TSE should hire a recruiting firm to find a suitable candidate.

These emails, the sole evidence Mele cites to support his contention that TSE, GmbH was involved in TSE's choice to terminate Stanton Sales, are inadequate to prove Mele's claim. First,

---

[5] Some jurisdictions view privilege as an affirmative defense, but in Pennsylvania, the plaintiff must prove the absence of any privilege or justification on the part of the defendant to make out a prima facie case. *See Triffin v. Janssen*, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993).

6

there is no mention in these emails that either Marinik or Engler was searching for candidates to replace Mele or Stanton Sales. Second, Engler served as both CEO of TSE, GmbH and Chairman of TSE's Board, and nothing in these emails indicates Engler was acting on behalf of TSE, GmbH and not TSE. This exhibit reveals only a discussion between TSE's Chairman of the Board and its President regarding whether to hire a replacement for a TSE employee who is not party to this lawsuit. The exhibit is therefore not relevant to Mele's claim that TSE, GmbH instructed TSE to terminate Mele's Agreement.

Mele next argues TSE, GmbH influenced TSE's decision to terminate Mele's Agreement because Engler assumed authority to make all commission-related decisions, and blocked Stanton Sales's access to TSE's computer system. Pl.'s Opp. to TSE, GmbH's Mot. for Summ. J. at 41. Mele cites five exhibits to support this proposition. The first is an email from Marinik to Mele in which Marinik states, "Jens-Uwe has assumed authority for making all commission-related decisions." Pl.'s Ex. 19. The second exhibit is an email from Engler to Tice in which Engler writes, "Bob, We received the order from Yale (Horvarth/Zeiss). Please introduce Midland if/how to communicate this to the reps. We must avoid paying commission on this order. Jens-Uwe." Pl.'s Ex. 20. A purchase order from Yale University is attached to the email. The purchase order contains nothing to indicate Mele or Stanton Sales was involved in securing this order, nor does it indicate in what capacity Engler was working when he wrote this email.

The third and fourth exhibits are described as "[o]ther [e]xamples in which Mr. Engler makes decisions with regard to commissions." Pl.'s Opp. at 41. The third exhibit is an email from Marinik to Engler and Tice, outlining commissions due to TSE employees, including Mele. Pl.'s Opp. Ex. 21. The fourth exhibit is a copy of the same email exchange with some portions redacted. Pl.'s

7

Opp. Ex. 22. The reason for the redactions is unexplained. The fifth exhibit includes an email from Engler to Goetz Martin instructing Martin to cut Mele's access to TSE's computer system. Pl.'s Opp. Ex. 23. These exhibits contain the same infirmity as Exhibit 18, because there is nothing to indicate Engler was not acting in his official capacity as TSE's Chairman of the Board when sending such emails.

A claim for intentional interference with contractual relations must involve three parties: the plaintiff, the alleged tortfeasor, and a third party. *Maier v. Marettii*, 671 A.2d 701, 707 (Pa. Super. Ct. 1995). If Engler acted in his capacity as TSE's Chairman of the Board, his actions cannot impose liability on TSE, GmbH. *See id.* ("A corporation acts only through its agents and officers, and such agents or officers cannot be regarded as third parties when they are acting in their official capacity.") ; *see also Rutherfoord v. Presbyterian Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992) (stating where "a claim for intentional interference is based upon an alleged 'contract' or business relationship with an employer, and that relationship is terminated by an agent of the employer acting within the scope of his agency, there is no third party involved and no claim will lie") (citations omitted). Thus, an agent of a corporation cannot be sued for tortious interference with a contract between his corporation and a plaintiff. *See CGB Occupational Therapy v. RHA Health Servs.*, 357 F.3d 375 (3d Cir. 2004). "The reason for this privilege is that holding an agent liable would be like holding the principle itself liable for the tort of interfering with its own contract, instead of holding the principal liable for breach of contract." *Id.*

Engler was an agent of TSE, so he cannot be held liable for interfering with TSE's contract with Mele, unless Mele can show he was acting outside the scope of his authority as TSE Chairman of the Board. Mele has provided no such evidence nor has he produced any evidence other agents

or employees of TSE, GmbH influenced TSE's decision not to renew his Agreement. Mele has not met his burden to survive summary judgment on his intentional interference claim by going "beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designat[ing] 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, Mele's claim for intentional interference with contractual relations fails because he has not shown any actual interference with TSE's decision to terminate his Agreement by TSE, GmbH.

Furthermore, even if Mele had produced evidence sufficient to create a genuine issue of material fact on the issue of whether TSE, GmbH interfered with his contract, he has not affirmatively proven TSE, GmbH's actions were not privileged or justified. Under Pennsylvania law, a corporate parent is privileged, in many cases, to interfere with its subsidiary's contractual relations. *See Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 856 (3d Cir. 2000) (citing *Green v. Interstate United Mgmt. Servs. Corp.*, 748 F.2d 827 (3d Cir. 1984); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 673 (3d Cir. 1991). A parent company can interfere with its subsidiary's business relations to prevent dissipation of its subsidiary's assets or to ensure the financial stability of the subsidiary. *Nat'l Data Payment Sys.*, 212 F.3d at 856. In the instant case, there is no evidence TSE, GmbH interfered with the contractual relations of its subsidiary. Even if TSE, GmbH instructed TSE to terminate its Agreement with Mele, such an instruction is based on a business decision regarding how to best ensure TSE's ongoing financial viability. Thus, any interference TSE, GmbH engaged in with regard to Mele's Agreement with TSE was privileged.

Moreover, a plaintiff in Pennsylvania who asserts a claim for intentional interference with contractual relations has the burden of proving the absence of any privilege or justification on the

part of the defendant. *Triffin v. Janssen*, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993). Mele has not suggested a theory under which this Court could find TSE, GmbH's actions were unjustified or unprotected by privilege, and he has produced no evidence disputing TSE, GmbH's asserted privilege to interfere in the business of its wholly-owned subsidiary. Therefore, summary judgment will be granted in favor of TSE, GmbH on Count III of Mele's complaint.

Mele's sole remaining claim, Count VI, alleges TSE, GmbH interfered with his prospective contractual relations by contacting his prospective and by interfering with Mele's sales efforts to such clients. In this Court's May 27, 2010 Opinion, this Court held Mele was not an exclusive salesperson for TSE in the region, and therefore, by the terms of the Agreement, TSE and its Agents were authorized to independently contact clients and potential clients within Mele's assigned territory. *See Mele v. TSE, Systems, GmbH*, 2010 U.S. Dist. LEXIS 52876, at *30 ("A plain reading of the language of the contract shows that both parties contemplated, and agreed, to permit TSE [to] offer [clients] reduced sales prices.").

Finally, although Mele alleges Tice, Engler, and "other German scientists" called customers in Mele's territory, he has not asserted any potential contractual relationships with which TSE, GmbH interfered. To state a cause of action for tortious interference with prospective contracts, a plaintiff must plead "something more than a mere hope or the innate optimism of the salesman." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979). Instead, he must show "an objectively reasonable probability that a contract will come into existence." *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 184 (3d Cir. 1997) (citations omitted). Mele has produced no evidence which to create an issue of material fact as to whether Engler or TSE, GmbH interfered with sales contracts which had a reasonable probability of coming into existence. Indeed, he has not identified

any prospective customers with whom he believes a contract would have been finalized but for TSE, GmbH's involvement. Therefore, Count IV of his complaint cannot survive summary judgment.

      An appropriate order follows.